KALETA *v.* KALETA

[No. 430, September Term, 1966.]

*Decided October 9, 1967.*

*Motion for rehearing filed on October 25, 1967; denied on November 6, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ., and RUTLEDGE, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Harry Goldman, Jr.,* for appellant.

*John J. Schuchman,* for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

After litigation between the parties over a period of years, Judge Jones granted the husband an absolute divorce on the ground that the wife unjustifiably had rejected his bona fide offers of reconciliation. The wife asks us to set the divorce aside, claiming (1) that the offers of reconciliation were not bona fide and, in any event, were not corroborated, and (2) that Judge Jones violated the Maryland Rules by taking testimony from the husband without the presence of the wife, knowing that the wife had not personally been served with notice to employ new counsel. None of the contentions has merit.

The couple separated in 1962. Each filed a bill against the other for a divorce a mensa. The hearings in the case were concluded on May 6, 1963. On May 28, approximately a week before the decree in the first case which ruled that neither party was entitled to a divorce was signed on June 4, the wife filed her second bill of complaint for divorce on the ground of desertion. A final hearing on the second bill was held on February 6, 1964. The wife failed to appear but Judge Cardin, after hearing counsel for both sides, was "inclined to believe" that the husband had made bona fide efforts to effect a reconciliation and dismissed the wife's bill.

On November 27, 1964, the husband filed his second bill for divorce, alleging that the wife's refusal to accept his bona fide offers of reconciliation amounted to desertion and constituted grounds for an absolute divorce. Judge Jones's eventual agreement with the husband was based on her finding that his testimony was credible and corroborated and the wife's testimony was largely incredible.

The wife's claim that the husband's search for suitable living quarters for the resumption of life together, his securing options and leases on various apartments and his repeated efforts to see her or talk on the telephone to her to effect a reconciliation were not made in good faith is based on her assertion that Judge Cardin "ordered" the husband to do as he did and his actions therefore were not voluntary. The short answer

is that Judge Cardin, as would be expected, did not order either party to do anything looking to reconciliation but, rather, to use his words, "made every effort to attempt a reconciliation between the parties, because each of the parties have indicated they were willing to reconcile," and "suggested" the execution of a lease for an apartment to be lived in by the couple. (The husband signed a lease, and made a deposit but when the time came for the wife to sign the lease she did not appear.)

The wife's claim that there was no corroboration of the husband's evidence as to sincere efforts on his part to reconcile is empty. In a contested case, although corroboration of essentials is required, it need be but slight. The testimony of the husband's daughter as to her observance of his activities looking to reconciliation, and the wife's rejections, considered with the mute testimony of the signed leases and rent deposits, were entirely adequate corroboration.

The point of procedure has no substance. The final divorce case had been set for hearing on the merits several times in 1965. In January 1966 counsel for the husband and then counsel for the wife agreed to a hearing on February 9. It was not reached that day or on the tenth. On February 11, the wife's counsel advised the court that although he had told his client of the hearing on the eleventh she would not appear because she was out "babysitting." Judge Jones told counsel that if the wife "chooses to make herself unavailable, that is her choice to make. This case will be started today." Late in the day when Judge Jones could have begun to hear the case, it developed that counsel for the husband could not go on the next day because of a specially set case in another court and Judge Jones said:

> "Under those circumstances, I have checked with the Assignment Commissioner, who advises me that my assignment for February 23rd, that is on a Wednesday, is open. I have instructed the Assignment Commissioner to set this case down especially for that date, Wednesday, February 23rd, and counsel, both of you make note of it, because I am setting that date from the bench, and even if you do not get any further notice from the Assignment Commissioner, this is your

notice and Mr. Dreiling, obviously you have a client who is not cooperating with you, but I would suggest you do all you can to get her by using the court processes and get a personal summons on her. Regardless of who is or who is not here on the 23rd, this case will be heard; that is final, without any more ifs ands or buts."

On February 15 the wife discharged her lawyer and signed a letter directing that the file be delivered to her present lawyer and acknowledging, as he had told her, that the trial was set for and would be held on February 23. Judge Jones was shown a copy of this letter and permitted counsel to withdraw from the case. A rule was laid on the wife to employ new counsel, pursuant to Maryland Rule 125 d, but the sheriff had been unable to make personal service on the wife by February 23. The wife's present counsel was, however, in court on the twenty-third. At Judge Jones's request he took the stand and testified that the wife came to his office on the fifteenth and he then became aware that the trial was set for the twenty-third. He reviewed the file and on the sixteenth told the wife what he thought her legal position was. He had not been paid a fee. When Judge Jones's bailiff called him on the twenty-third to come to court he called the wife, told her the court was going to proceed with her case and that he would give her no further advice because he had not yet been paid his retainer. She told him she would not appear in court and he so advised Judge Jones.

Judge Jones then summarized the history of the case for the record. The case had been set for trial on the eleventh with notice to everyone. The wife failed to appear. Said Judge Jones:

"Rather than proceed on that date I did grant a continuance and especially set the case from the bench for today, February 23, 1966 * * *. The case was set especially as the first case this morning, at 10 o'clock. It is now 2:30 in the afternoon. * * * She [the wife] knew the case was in for trial. She has chosen not to be here. * * * but I see no reason why she should be

permitted to play fast and loose with this Court. I will not delay the proceeding any longer * * *."

The testimony of the husband and his daughter was then taken.

On March 10, 1966, the wife's present lawyer formally entered his appearance and a week later filed a petition to open the case for the offering of testimony for the wife. The motion was granted and the wife testified, her testimony being in contradiction of and in conflict with that offered for the husband. Judge Jones refused to strike the husband's evidence and, as we have noted, said she believed the husband and not the wife.

The wife was given the written notice of her lawyer's intention to withdraw, contemplated by Maryland Rule 125 a. She consulted a new lawyer eight days before the trial and he advised her of her legal rights the next day. She knew of the trial being scheduled for February 11 and that her wilful refusal to attend had caused it to be continued to February 23, as well as that it definitely would be held that day. She deliberately refused to appear. The recital of events on the days preceding the trial makes it manifest that the wife was in fact afforded the benefit of all the purposes and protections of Rule 125 d which requires that where leave to withdraw is granted and the party has no lawyer and does not intend to represent himself, the clerk must issue an order to the party to employ new counsel, the order to be served pursuant to Rule 104.

This being so, the fact that the order to employ new counsel was not timely served upon the wife loses significance. The lady was given every chance to appear either in proper person or by counsel, as she ultimately did, and to offer testimony supporting her position. She deprived herself of the opportunity to cross-examine her husband and his daughter and cannot under the circumstances now cry that form should prevail over substance and use her lost opportunity to require that her husband's evidence be stricken.

*Decree affirmed, costs to be paid by appellee.*